UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

CAROL C.,

Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,[1]

Defendant.

Case No.: 18cv1499-AJB(MSB)

**REPORT AND RECOMMENDATION REGARDING JOINT MOTION FOR JUDICIAL REVIEW [ECF NO. 20]**

This Report and Recommendation is submitted to the Honorable Anthony J. Battaglia, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California. On June 29, 2018, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial

_____

[1] On June 17, 2019, Andrew Saul became the Commissioner of the Social Security Administration. See https://www.ssa.gov/agency/commissioner.html (last visited on January 24, 2020). The Court substitutes Andrew Saul for his predecessor, Nancy A. Berryhill, as the defendant in this action. See Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g) (providing that "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant.").

review of a decision by the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits. (Compl., ECF No. 1.)

Now pending before the Court is the parties' Joint Motion for Judicial Review. For the reasons set forth below, the Court **RECOMMENDS** that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I. PROCEDURAL BACKGROUND

On March 17, 2009, Plaintiff filed her first application for disability insurance benefits, alleging disability beginning on April 2, 2008. (Certified Admin. R. 170, ECF No. 15 ("AR").) After the application was denied initially and on reconsideration, on November 27, 2009, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Id.) On November 9, 2010, a hearing was held before ALJ Larry Parker ("the first ALJ"), during which Plaintiff was represented by counsel. (Id. at 143-66.) A vocational expert ("VE") was also present. (See id.) On November 24, 2010, the first ALJ found that Plaintiff was not disabled. (Id. at 167-79.) On January 20, 2011, Plaintiff requested that the Appeals Council review the first ALJ's decision. (Id. at 230-32.)

On February 9, 2011, before the Appeals Council made its decision, Plaintiff filed a second application for disability benefits, alleging disability beginning on November 25, 2010. (Id. at 373-81.) After Plaintiff's second application was denied initially and on reconsideration, on November 1, 2011, Plaintiff requested a hearing before an ALJ. (Id. at 247-48.)

On July 27, 2012, the Appeals Council denied Plaintiff's request to review the first ALJ's decision. (Id. at 190-96.)

On October 10, 2013, a hearing was held on Plaintiff's second application before ALJ Peter Valentino ("the second ALJ"), during which Plaintiff was represented by counsel. (Id. at 98-42.) Two medical experts and a VE were also present. (See id.) On October 29, 2013, the second ALJ found that Plaintiff was not disabled. (Id. at 200-15.)
/ / /

On November 14, 2013, Plaintiff requested the Appeals Council review of the second ALJ's decision.  (Id. at 357-59.)

On November 2, 2012, Plaintiff appealed the denial of her first application by filing a complaint in district court, and on January 7, 2014, the district court reversed and remanded the case for further administrative proceedings.  See Cooper v. Colvin, Civil Case No. 12cv2673 AJB (DHB), 2014 WL 50810 (S.D. Cal. Jan. 7, 2014) ("Carol C. I").  On August 27, 2014, pursuant to the order of the district court, the Appeals Council vacated the denials of benefits for Plaintiff's first and second applications.  (AR at 227-28.)  The Appeals Council consolidated the matters and ordered further administrative proceedings.  (Id.)

On July 24, 2017, a hearing was held before the second ALJ (ALJ Valentino) on Plaintiff's first and second applications, during which Plaintiff was represented by counsel.  (Id. at 33-97.)  Two medical experts, Dr. Arthur Lorber, M.D. and Dr. Julian Kivowitz, M.D., and a VE were also present.  (See id.)  On March 2, 2018, the second ALJ found that Plaintiff was not disabled ("the second ALJ's decision after remand").  (Id. at 4-20.)  On June 29, 2018, Plaintiff filed the instant civil action.  (Compl., ECF No. 1.)

## II.  SUMMARY OF THE ALJS' FINDINGS

In rendering their decisions, both the first and second ALJs followed the Commissioner's five-step sequential evaluation process.  See 20 C.F.R. § 404.1520.

### A.    The First ALJ's Decision

At step one, the first ALJ found that Plaintiff had not engaged in substantial gainful activity since April 2, 2008, the alleged onset date.  (AR at 172.)  At step two, the ALJ found that Plaintiff had the following impairments:  headache syndrome, right knee internal derangement, fibromyalgia, depressive disorder, and anxiety disorder.  (Id.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments.  (Id. at 173.)  Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to "perform light work as

defined in 20 CFR 404.1567(b) except that she must avoid concentrated exposure to cold, vibrations and hazards, and she is limited to performing simple tasks." (Id. at 174.)

At step four, the ALJ adduced and accepted the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC would be unable to perform any of her past relevant work. (Id. at 177-78.) The ALJ then proceeded to step five of the sequential evaluation process. (Id. at 178-79.) Based on the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC could perform the requirements of occupations that existed in significant numbers in the national economy—such as production inspector, hand packager, and production assistant—the first ALJ found that Plaintiff was not disabled. (Id.)

**B.    The Second ALJ's Decision**

At step one, the second ALJ found that Plaintiff had not engaged in substantial gainful activity since November 25, 2010, the alleged onset date. (Id. at 202.) At step two, the ALJ found that Plaintiff had the following impairments: "fibromyalgia, bilateral knee pain due to internal derangement and torn meniscus, status post multiple knee surgeries, irritable bowel syndrome, depression, and anxiety disorder" (post-traumatic stress disorder and panic disorder). (Id. at 202-03.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (Id. at 206.) Next, the ALJ determined that Plaintiff had the RFC to do the following work:

> perform light work as defined in 20 C.F.R. 404.1567(b) and which involves lifting no more than 20 pounds at a time, frequently lifting and carrying of up to ten pounds, standing or walking up to six hours in an eight-hour workday, and sitting intermittently during the remaining time; except she must avoid concentrated exposure to cold, vibrations, and hazards; and is limited to simple, repetitive tasks and limited public contact.

(Id.)

///

At step four, the ALJ adduced and accepted the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC would be unable to perform any of her past relevant work.  (Id. at 213-14.)  The ALJ proceeded to step five of the sequential evaluation process.  (Id. at 214-15.)  Based on the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC could perform the requirements of occupations that existed in significant numbers in the national economy—such as garment folder, assembler (small products), and bagger (garments)—the second ALJ found that Plaintiff was not disabled.  (Id.)

## C.   The District Court's Previous Decision to Remand

In reviewing the denial of Plaintiff's first application for disability benefits, Magistrate Judge David H. Bartick issued a Report and Recommendation ("R&R") recommending that the case be remanded for further administrative proceedings.  See Carol C. I, 2014 WL 50810, at *2.  Judge Bartick concluded that the first ALJ erred by rejecting the opinion of Plaintiff's treating psychologist, Dr. Gayle Jensen, Psy.D.  Id. at *17.  Judge Bartick found that the four reasons given by the first ALJ for rejecting Dr. Jensen's opinion were not specific and legitimate, and were not supported by substantial evidence.  Id.  Neither party filed objections.  Id. at *1.  District Judge Anthony J. Battaglia adopted the R&R and remanded the case for further administrative proceedings.  Id.

## D.   The Second ALJ's Decision After Remand

After the case was remanded, the second ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since April 2, 2008, the alleged onset date. (AR at 6.)  At step two, the ALJ found that Plaintiff had the following impairments: headache syndrome, right knee internal derangement, fibromyalgia, depressive disorder, and anxiety disorder.  (Id.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (Id. at 7.)  The ALJ determined that Plaintiff had the RFC to perform the following work:

lift and/or carry ten pounds frequently, twenty pounds occasionally; she can stand and/or walk for four hours out of an eight-hour workday one hour at a time; she can sit for six hours out of an eight-hour workday one hour at a time with a sit/stand option; she could use foot pedals occasionally; she could do postural activities occasionally except she is not to climb ladders, kneel or crawl; she is to avoid all exposure to unprotected heights and dangerous machinery; and she is limited to simple, repetitive tasks.

(Id. at 9.)

At step four, the ALJ adduced and accepted the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC would be unable to perform any of her past relevant work as a medical assistant. (Id. at 18-19.) The ALJ proceeded to step five of the sequential evaluation process. (Id. at 19-20.) Based on the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC could perform the requirements of occupations that existed in significant numbers in the national economy—such as cashier, small products assembler, and document preparer—the second ALJ found that Plaintiff was not disabled. (Id.)

### III. DISPUTED ISSUES

As reflected in parties' Joint Motion for Judicial Review, Plaintiff is raising the following two issues as the grounds for reversal and remand:

1.      Whether the ALJ[2] properly considered the opinion of Plaintiff's treating physician, Dr. Jensen (J. Mot. Jud. Review 5, ECF No. 20 ("J. Mot.")); and

2.      Whether the ALJ properly considered the testimony of medical expert, Dr. Kivowitz, regarding Plaintiff's mental impairment.  (Id.)

/ / /

/ / /

---

[2]  For the remainder of this R&R, "the ALJ" or "the ALJ's decision," when used to refer to an ALJ or decision in the administrative record, refers to the second ALJ's decision after remand, unless noted otherwise.

# IV. STANDARD OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of the Commissioner's final decision.  42 U.S.C. § 405(g).  The scope of judicial review is limited, and the denial of benefits will not be disturbed if it is supported by substantial evidence in the record and contains no legal error.  Id.; Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012).

"Substantial evidence means more than a mere scintilla, but less than a preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (quoting Desrosiers v. Sec'y Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971).  Where the evidence is susceptible to more than one rational interpretation, an ALJ's decision must be upheld.  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).  This includes deferring to an ALJ's credibility determinations and resolutions of evidentiary conflicts.  See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001).  Even if the reviewing court finds that substantial evidence supports an ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision.  See Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).

# V. DISCUSSION

## A.   The ALJ Did Not Properly Consider the Opinion of Treating Physician, Dr. Jensen

Plaintiff argues that the ALJ did not provide specific and legitimate reasons for assigning little weight to the opinion of Plaintiff's treating psychologist, Dr. Jensen.  (J. Mot. at 8.)  Specifically, Plaintiff contends the ALJ erred when he concluded that Dr. Jensen's opinion was unsupported by objective clinical findings, and inconsistent with the record and Plaintiff's activities of daily living.  (See id. at 8-10.)  The Commissioner asserts that the ALJ's reasons for affording little weight to Dr. Jensen's opinion are specific, legitimate, and supported by substantial evidence.  (Id. at 14-21.)

### 1. Applicable law

Three types of physicians may offer opinions in Social Security cases:  "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)."  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is generally given more weight than that of a physician who did not treat the claimant.  See id.; 20 C.F.R. § 404.1527(c)(1).

A treating physician's opinion is not entitled to controlling weight if inconsistent with other substantial evidence in the record.  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007).  However, "[t]o reject the opinion of a treating physician which conflicts with that of an examining physician, the ALJ must 'make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'"  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986) (per curiam) (citing Swanson v. Sec'y Health & Human Servs., 763 F.2d 1061, 1065 (9th Cir. 1985)); see also Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988) ("The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct. . . . [I]t is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings.").

### 2. Analysis

#### a. The first ALJ's reasoning

The first ALJ considered Dr. Jensen's opinion that Plaintiff was unable to complete a normal workweek without interruptions from psychologically-based symptoms or perform activities within a schedule.  (AR at 177.)  The first ALJ gave the opinion little weight, stating the following:

The undersigned has also considered the [October 2010] checklist form completed by Dr. Jensen, wherein she opines the claimant is unable to complete a normal workweek without interruptions from psychologically based symptoms or perform activities within a schedule. Not only does this opinion contradict her own report completed in April 2009 as well as Dr. Engelhorn's evaluation, this form is internally contradictory. Dr. Jensen claims the claimant cannot complete a normal workweek, yet she also states the claimant has no difficulties whatsoever completing both simple and complex tasks and has no deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a time [sic] manner. Finally, Dr. Jensen provided no objective medical records or clinical findings to support this form. The Administrative Law Judge gives Dr. Jensen's opinion little weight since it is not supported by acceptable clinical and laboratory findings and conflicts with the weight of the medical evidence. In reaching this conclusion, the undersigned notes that the Social Security Administration may only give controlling weight to a treating physician's opinion when the treating physician's opinion is supported by the appropriate signs and diagnostic tests and is not inconsistent with the other evidence of record.

(Id. (internal citations omitted).) The district court summarized the first ALJ's findings as follows: "[t]he ALJ dismissed [Dr. Jensen's opinion contained in the October 2010 checklist form] on the basis that it: (1) contradicted Dr. Jensen's own report completed in April 2009;[3] (2) contradicted Dr. Engelhorn's evaluation; (3) contained internal inconsistencies; and (4) was not supported by objective evidence." Carol C. I, 2014 WL 50810, at *11. In its 2013 decision remanding the first ALJ's decision, the district court found that the first ALJ committed legal error by giving little weight to Dr. Jensen's opinion contained in the October 2010 checklist form. See id. at *1, *11-17.

///
///
///

_____

[3] Dr. Jensen's October 2010 checklist form and April 2009 report referenced in the first ALJ's decision are not contained in the administrative record currently before the Court.

### b.    The second ALJ's reasoning

The second ALJ's decision before remand cited an opinion from Dr. Jensen that Plaintiff was "markedly limited" in her ability to "maintain regular attendance and be punctual," and "moderately limited" in her ability to "complete a normal workday without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number of and length of rest periods," and "accept instructions and respond appropriately to criticism from supervisors."  (AR at 685-86.)  This opinion, and the records upon which it is based, are included in the administrative record currently before the Court.  (Id. at 547, 685-86.)  The second ALJ gave the opinion "some" weight, stating the following:

> On April 13, 2011, Dr. Jensen completed a questionnaire indicating that the claimant had no limitations in all domains, except for marked impairment in maintaining regular attendance and being punctual, and moderate limitations in completing a normal work day and accepting instructions and responding appropriately to criticism.  The undersigned gives this only some weight.  The undersigned agrees that the claimant would have mostly no functional limitations.  Such a finding is consistent with the claimant's normal activities of daily living and ability to care for her young son.  The undersigned also finds that the claimant would have moderate limitations in some areas of social functioning, such as responding to criticism given her history of abuse and history of anxiety disorders.  However, the undersigned does not agree that the claimant would have marked limitation in any areas, particularly maintaining attendance.  Her ability to care for her young son and run a household, sometimes alone, her normal mental status examination at her consultative examination, and her ability to attend many medical appointments (many of which yielded no or few objective findings) all show that she was able to leave the house frequently and attend to tasks regularly.

(Id. at 211-12 (internal citations omitted).)

In the second ALJ's decision after remand, the ALJ again considered Dr. Jensen's opinion that Plaintiff was "markedly limited" in her ability to "maintain regular attendance and be punctual," and "moderately limited" in her ability to "complete a normal workday without interruptions from psychologically based symptoms,

performing at a consistent pace without an unreasonable number of and length of rest periods," and "accept instructions and respond appropriately to criticism from supervisors." (Id. at 685-86.) The ALJ assigned "little" weight to the opinion, stating the following:

> The undersigned has considered and gives little weight to G. Jensen, Ph.D., who filled out a temporary off work form on April 29, 2008 and filled out a residual functional capacity [RFC] questionnaire on April 13, 2011 opining none, moderate, and marked limitations. The undersigned has given little weight to this opinion because it is not supported by objective evidence and it is inconsistent with the record as a whole. Dr. Jensen primarily summarized in the treatment notes the claimant's subjective complaints, diagnoses, and treatment, but he did not provide objective clinical or diagnostic findings to support the functional assessment. This opinion is inconsistent with the objective findings already discussed . . . in this decision, which show mostly normal mood and affect. This opinion is also inconsistent with the claimant's admitted activities of daily living that have already been described . . . in this decision.

(Id. at 18 (internal citation omitted).)[4]

"It is well established that the district court may not resolve a social security case de novo and reach its own conclusions from the evidence." Guttilla v. Astrue, Civil No. 09cv2259 MMA(RBB), 2010 WL 5313318, at *13 (S.D. Cal. Aug. 13, 2010) (citing Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984)). The Court limits its inquiry to the reasons the ALJ stated in his decision. See id. The Court will therefore address each of the ALJ's stated reasons for discounting the opinion of Plaintiff's treating psychologist, Dr. Jensen.

_____

[4] The April 29, 2008 "temporary off work form" and the April 13, 2011 functional capacity questionnaire were not included in the administrative record previously provided to the district court. (See AR at 177 (first ALJ's decision referring to Dr. Jensen's "checklist form" and April 2009 report, as well Dr. Engelhorn's evaluation)); see also Carol C. I, 2014 WL 50810, at *11-12 (referring to Dr. Jensen's October 2010 "checklist form" and April 2009 report, as well as Dr. Engelhorn's opinion). They are, however, part of the administrative record before the Court in this case. (See AR at 547 (Claim for Disability Insurance Benefits Doctor's Certificate dated April 29, 2008), 658-86 (Mental Work Restriction Questionnaire dated April 13, 2011).)

### i.  Objective evidence

In the second ALJ's decision after remand, the first reason the ALJ gave for affording Dr. Jensen's opinion little weight is that the opinion was not based on objective evidence because "Dr. Jensen primarily summarized in the treatment notes the claimant's subjective complaints, diagnoses, and treatment, but he did not provide objective clinical or diagnostic findings to support the functional assessment."  (Id.)  In reaching this conclusion, the ALJ did not cite a specific portion of the record or explain why Dr. Jensen's extensive treatment records are "primarily" a "summary" of Plaintiff's subjective complaints, rather than objective clinical or diagnostic findings.

While Dr. Jensen's opinion is based, at least in part, on Plaintiff's self-reported symptoms, "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness."  Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017) ("Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields.  Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient.  But such is the nature of psychiatry."); see also Poulin v. Bowen, 817 F.2d 865, 873 (D.C. Cir. 1987) (internal citations omitted) ("A physical or mental impairment must 'result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.'  However, unlike a broken arm, a mind cannot be x-rayed[.]").

Further, Dr. Jensen did not "primarily summar[ize]" Plaintiff's subjective complaints.  Rather, Dr. Jensen provided objective clinical and diagnostic findings.  Plaintiff began seeing Dr. Jensen on April 25, 2008, complaining of migraine headaches, severe anxiety, depression, post-traumatic stress disorder ("PTSD"), and obsessive-compulsive disorder ("OCD"), as well as grief, and severe relational difficulties.  (AR at 542.)  On April 25, 2008, Dr. Jensen completed a psychiatric diagnostic evaluation of Plaintiff, which resulted in a diagnosis, treatment plan, and prognosis.  (Id. at 542-43.)

The record also contains progress notes from over forty visits beginning in 2011. (Id. at 678-90, 1553-97.)[5]

On April 29, 2008, Dr. Jensen completed a "Claim for Disability Insurance Benefits Doctor's Certificate," in which she diagnosed Plaintiff with major depressive disorder with recurrent and severe psychotic features, PTSD, and general anxiety disorder. (Id. at 547.) Dr. Jensen reported: "[f]earfulness every day for 27 days, vegetative symptoms, insomnia, loss of appetite, hopelessness and helplessness, social withdrawal, heightened worry, frequent nightmares, flashbacks." (Id.) Plaintiff continued treatment with Dr. Jensen two to four times per month until April 6, 2011. (Id. at 687.)

On April 13, 2011, Dr. Jensen completed a "Mental Work Restriction Questionnaire," where she stated that Plaintiff had the following severe impairments: (1) major depressive disorder—recurrent, moderate to severe; (2) obsessive-compulsive disorder; (3) panic disorder without agoraphobia; (4) PTSD; and (5) insomnia. (Id. at 685-86.) The questionnaire asked Dr. Jensen to "identify the tests she administered which verify or tend to verify the existence of the impairment or disorder," and she responded: (1) "[e]ndorses 5 symptoms DSM-IV[6] crit. for Major Depressive Episode;" (2) "[e]ndorses the 4 criteria from DSM-IV for O.C.D.;" (3) "[e]ndorses 7 symptoms DSM-IV crit. for Panic Attack;" (4) "[e]ndorses 7 symptoms DSM-IV crit. for PTSD;" and (5) "[m]eets 5 criteria from DSM-IV for Primary Insomnia." (Id. at 685.) Dr. Jensen also noted that Plaintiff was "very sensitive" to medication and had "severe side effects from all the depression and anxiety medications she ha[d] tried." (Id. at 686.)

─────────────────────

[5] The Court notes that the administrative record contains multiple copies of Dr. Jensen's records. The first set of copies is located in AR at 542-49 (containing Dr. Jensen's records from 2008), 678-90 (containing Dr. Jensen's records from January 2011 to April 2011), and 1553-97 (containing Dr. Jensen's records from May 2011 to March 2013). The second set is located in AR at 2063-107. Additional copies of the 2008 records are located in AR at 2446. For ease of reference, citations to a document in the record will be to the first set of copies containing the document, as the copies appear in the record.

[6] "DSM-IV" refers to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000).

18cv1499-AJB(MSB)

On April 13, 2011, Dr. Jensen completed an "Evaluation Form for Mental Disorders," which asked her to describe, under the "mental status examination" section, Plaintiff's attitude, behavior, intellectual functioning/sensorium, and affective status. (Id. at 688.) Dr. Jensen stated that Plaintiff "can be emotionally labile" and "very sensitive to criticism [and can] become defensive." (Id.) With respect to intellectual functioning, Dr. Jensen noted that "[p]rolonged concentration (e.g. for reading) can be difficult for [Plaintiff] if she is poorly rested, anxious, tearful or experiencing a migraine." (Id.) Dr. Jensen stated that Plaintiff suffers from anxiety, depression, and fearfulness, gets upset if her routines are disturbed, and is extremely cautious about locking doors. (Id.) Dr. Jensen also noted that Plaintiff can perform all activities of daily living "although sometimes it is very effortful." (Id. at 689.) With respect to Plaintiff's "ability to adapt to stresses common to the work environment including . . . interaction with supervisors," Dr. Jensen wrote "unknown." (Id.) Under "diagnosis," Dr. Jensen cited multiple sections of the DSM. (Id. at 690.) Dr. Jensen additionally noted that Plaintiff can perform tasks "unless she has a migraine or a flare up of fibromyalgia." (Id. at 689.) Finally, Dr. Jensen stated that Plaintiff could not handle medication, and therefore it was unlikely that Plaintiff's symptoms would improve. (Id. at 690.)

In the context of psychology and psychiatry, Dr. Jensen's records constitute objective clinical and/or diagnostic findings. See Buck, 869 F.3d at 1049; see also Poulin, 817 F.2d at 873-74 ("[W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field[.]"). The Court therefore finds that the ALJ's first proffered reason was not specific and legitimate reason supported by substantial evidence in the record to discount Dr. Jensen's opinion.

### ii.    Inconsistency with the record

The second reason the ALJ afforded Dr. Jensen's opinion little weight is that the opinion was "inconsistent with the objective findings already discussed . . . in this decision, which show mostly normal mood and affect." (AR at 18.) The findings to

14

which the ALJ referred include the opinion of Dr. Nicholson, an examining psychiatrist, which the ALJ assigned significant weight, and the opinion of Dr. Kivowitz, a nonexamining psychiatrist, which the ALJ gave great weight. (Id. at 15, 18.)

### 1. Examining psychiatrist's Dr. Nicholson's opinion

The second ALJ's decision after remand states the following regarding Dr. Nicholson's opinion:

> The claimant underwent a psychiatric consultative examination with Dr. Nicholson on September 26, 2011. The claimant was neatly and casually groomed. The claimant made good eye contact and good interpersonal contact with the interviewer. The claimant was generally cooperative. The patient was able to volunteer information spontaneously. There was no psychomotor agitation or retardation. The claimant appeared to be genuine and truthful. There was no evidence of exaggeration or manipulation. The claimant did not appear to be under the influence of drugs or alcohol. The claimant was coherent and organized. There was no tangentially or loosening of associations. The claimant was relevant and non-delusional. There was no bizarre or psychotic thought content. The claimant denied any plan for self-harm or any plan to harm others. The claimant denied recent auditory or visual hallucinations. The claimant did not appear to be responding to internal stimuli during the interview. Her mood was depressed and affect was dysphoric. It was appropriate and congruent with thought content. The claimant was not tearful. Her speech was normally and clearly articulated, without stammering, dysarthria, neologisms, tangentiality, circumstantiality or loosened, unusual or blocked associations. The claimant was alert and oriented to time, place, person and purpose. The claimant appeared to be of average intelligence. The claimant's fund of knowledge was grossly intact. Insight and judgment appeared to be grossly intact. She was diagnosed with anxiety disorder not otherwise specified, obsessive compulsive disorder, and depressive disorder not otherwise specified.
>
> . . . .
>
> The undersigned has considered and gives significant weight to Dr. Nicholson who opined mild and moderate limitations. This was based on an in-person exam, well-supported by objective, medically acceptable clinical or laboratory diagnostic techniques, the assessment is complete, specific facts are cited upon which the conclusion is based, and is largely

consistent with the record as a whole.  Therefore, it is given significant weight.

(Id. (internal citations omitted).)

The Court initially notes that in <u>Carol C. I</u>, one of the reasons the first ALJ assigned little weight to Dr. Jensen's opinion was because the ALJ found that it was inconsistent with the opinion of an examining psychiatrist, Dr. Engelhorn, to which the first ALJ gave great weight.  <u>See id.</u>, 2014 WL 50810, at *11-12.  District Judge Battaglia remanded the case, in part, because the first ALJ "failed to set forth a detailed and thorough summary of the conflicting opinions" and instead "simply concluded that the two opinions were contradictory."  <u>See id.</u> at *1; <u>see also id.</u> at *12 (citations omitted).

In his decision after remand, the second ALJ gave little weight to Dr. Jensen's opinion because it was inconsistent with the opinion of an examining psychiatrist, Dr. Nicholson.  (See AR at 15, 18.)  The second ALJ's written decision states that Dr. Jensen's opinion was "inconsistent with the objective findings already discussed . . . in this decision, which show mostly normal mood and affect."  (Id. at 18.)  The description of Dr. Nicholson's opinion as "show[ing] [that Plaintiff had] mostly normal mood and affect" is not a detailed and thorough summary of the reasons for discounting Dr. Jensen's opinion.  <u>See Magallanes</u>, 881 F.2d at 751 ("[t]o reject the opinion of a treating physician which conflicts with that of an examining physician, the ALJ must 'make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'"); <u>Embrey</u>, 849 F.2d at 421-22 ("The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct. . . . [I]t is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings.").  Notably, as stated by the ALJ in the same written opinion, Dr. Nicholson found that Plaintiff's "<u>mood was depressed</u> and <u>affect was dysphoric</u>."  (AR at 15 (emphasis added).)

"If the ALJ's explanation is inadequate, the reviewing court may not search the record for reasons that support his decision."  Langdon v. Astrue, No. 12–CV–2624 AJB (NLS), 2013 WL 5592483, at *18 (S.D. Cal. Oct. 9, 2013) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)).  Despite this Court's guidance in Carol C. I. when remanding the case, the decision of the second ALJ after remand, just like the decision of the first ALJ, did not set forth a detailed and thorough summary of the allegedly conflicting opinions.

### 2.    Nonexamining psychiatrist Dr. Kivowitz's opinion

The second ALJ's decision after remand states the following regarding Dr. Kivowitz's opinion:

> Dr. J. Kivowitz, M.D., Board certified psychiatry and neurology, reviewed the medical records prior to the hearing and was present to hear the claimant's testimony and offer his own medical expert testimony.  Dr. Kivowitz reviewed the medical records.  Dr. Kivowitz stated that in his opinion the claimant had the following medically determinable impairments:  major depression disorder, excessive[sic] compulsive disorder, PTSD, borderline personality disorder, anxiety disorder.  She has had GAF scores of 60, indicating moderate symptoms.

> In Dr. Kivowitz's opinion, these impairments do not singly or in combination meet or equal a medical Listing.

> Dr. Kivowitz opined the claimant's impairments would cause the following limitations:  simple repetitive tasks.

> . . . .

> The undersigned has given great weight to the opinion of the impartial medical expert Dr. Kivowitz.  In this case specifically, Dr. Kivowitz is a mental health specialist, he has an awareness of all the evidence in the record, and he has an understanding of social security disability programs and evidentiary requirements.  Most importantly, his opinion regarding the claimant's functional limitations is highly credible because it is well-supported by the objective medical evidence already discussed in this decision.

(AR at 15, 18 (internal citations omitted).)

Dr. Kivowitz's opinion, as described by the ALJ, does not address Plaintiff's mood and affect, let alone show a "mostly normal mood and affect." For the same reasons discussed above with regard to Dr. Nicholson's opinion, the decision of the second ALJ after remand did not set forth a detailed and thorough summary of the allegedly conflicting opinions. The Court therefore finds that the ALJ's second proffered reason for assigning little weigh to Dr. Jensen's opinion was not specific and legitimate reason supported by substantial evidence in the record.

### iii. Activities of daily living

The third reason the ALJ afforded Dr. Jensen's opinion little weight is that the opinion was "inconsistent with the claimant's admitted activities of daily living that have already been described . . . in this decision." (<u>Id.</u> at 18.) The ALJ stated the following regarding Plaintiff's activities of daily living:

> Despite the alleged impairment, the claimant has engaged in a somewhat normal level of daily activity and interaction. The claimant admitted activities of daily living including [that] she cares for her young son, flew on a plane to Florida with her son, drives, takes her son to school, does light household chores, and she does exercises. In a function report, the claimant acknowledged she feeds, cleans and bathes her son, has no problem with personal care, prepares meals, does laundry, does some cleaning, goes out alone, shops in stores, handles her finances, goes out with her mother once a week, has no problem getting along with family, friends, neighbors or others, and follows instructions okay. She told Dr. Nicholson she does laundry, drives, handles bills, and is able to go out on her own.
>
> It appears that despite her impairment, she has engaged in a somewhat normal level of daily activity and interaction. It should be noted that the physical and mental capabilities requisite to performing many of the tasks described above as well as the social interactions replicate those necessary for obtaining and maintaining employment.

(<u>Id.</u> at 10 (internal citations omitted).)

Plaintiff contends that the ALJ "does not state how a finding that [Plaintiff] would have a marked impairment in maintaining attendance is contradicted by her daily

activities."[7]  (J. Mot. at 10.)  Plaintiff further points out that "Dr. Jensen also noted that [Plaintiff] could perform activities of daily living."  (Id.)  Additionally, Plaintiff argues that the key issue is "whether the ability to perform those activities are transferrable into the more grueling work environment."  (Id.)  The Commissioner contends that "[t]he ALJ is not stating that [Plaintiff's] activities are equivalent to work-related functions, but that they include physical and mental capabilities and social interactions that replicate those necessary for obtaining and maintaining employment."  (Id. at 20.)

"An inconsistency between a treating physician's opinion and a claimant's daily activities is a specific and legitimate reason to discount the treating physician's opinion." Varao v. Berryhill, Case No.: 17-cv-02463-LAB (RNB), 2018 WL 3707093, at *6 (S.D. Cal. Aug. 3, 2018) (citing Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600-02 (9th Cir. 1999)).  In this case, Plaintiff's treating psychologist, Dr. Jensen opined that Plaintiff was "markedly limited" in her ability to "maintain regular attendance and be punctual," and "moderately limited" in her ability to "complete a normal workday without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number of and length of rest periods," and "accept instructions and respond appropriately to criticism from supervisors."  (Id. at 685-86.)  The ALJ concluded that Plaintiff's activities of daily living are inconsistent with the work limitations identified by Dr. Jensen because the "physical and mental capabilities requisite to performing many of the tasks [in Plaintiff's activities of daily living] as well as the social interactions replicate those necessary for obtaining and maintaining employment."  (AR at 10.)  The ALJ did not explicitly state how Plaintiff's activities of daily living are inconsistent with her alleged inability to maintain regular attendance and be punctual. Some of Plaintiff's activities of daily living identified by the ALJ, especially taking a child

---

[7] Plaintiff does not address whether a moderate impairment in Plaintiff's ability to complete a normal workday or to deal with supervisors is contradicted by her daily activities.

to school and flying on an airplane with a child, reasonably require some level of punctuality.  Caring for oneself, one's child and one's home also typically involve tasks requiring some punctuality, such as the scheduling of various appointments related to healthcare, personal care, home repair, etc.  The ALJ is incorrect, however, that "many" of the tasks in Plaintiff's activities of daily living are inconsistent with an ability to maintain regular attendance at a job, especially given the fact that Plaintiff would likely have to continue at least some of her activities of daily living in addition to working full-time.  See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("Several courts, including this one, have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.") (listing cases).

Furthermore, Dr. Jensen did not specifically opine that Plaintiff was limited in "obtaining and maintaining employment."  (See AR at 10.)  Rather, Dr. Jensen opined that Plaintiff was "markedly limited" in attendance and punctuality, and "moderately limited" in completing a workday, working at a consistent pace, and dealing with criticism from supervisors.  (Id. at 685-86.)  While all of these limitations are likely to affect Plaintiff's ability to obtain and maintain employment, the ALJ did not specifically address any of the particular limitations identified by Dr. Jensen.  Courts have recognized "critical differences" between activities of daily living and activities required for full-time work, including more flexibility in scheduling and greater ability to obtain assistance from others in activities of daily living than in work activities, as well as not being held to a minimum standard of performance required by an employer.  See, e.g., Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012) ("The failure to recognize these differences is a recurrent . . . feature of opinions by administrative law judges in social security disability cases."); see also Vallandingham v. Colvin, No. CV 14–4847 RNB, 2015 WL 1467189, at *5 (C.D. Cal. Mar. 26, 2015) ("Evidence that plaintiff performed some household and social activities on th[e] limited basis . . . does not convince the Court that plaintiff engaged in activities that resembled those necessary for engaging in competitive, full-time employment at the light exertional level.") (citing Ghanim, 763

18cv1499-AJB(MSB)

F.3d at 1165 (claimant's performance of basic chores, sometimes with help, and attendance at occasional social events did not show that claimant engaged activities transferable to a work setting)). For the foregoing reasons, the Court finds that the ALJ's third proffered reason was not legally sufficient reason for giving Dr. Jensen's opinion little weight.

### iv. Conclusion

In light of the reasons given in the ALJ's decision, the Court finds that the ALJ did not provide specific, legitimate reasons supported by substantial evidence in the record for discounting Dr. Jensen's opinion. See Batson, 359 F.3d at 1195; see also Lusardi v. Astrue, 350 F. App'x 169, 173 (9th Cir. 2009) ("[I]f the ALJ rejects significant probative evidence, he must explain why."). Accordingly, the Court finds that the ALJ failed to properly evaluate the opinion of Dr. Jensen.

**B. The ALJ Improperly Considered Dr. Kivowitz's Testimony Regarding Plaintiff's Mental Impairment**

Plaintiff contends that the ALJ failed to "articulate some basis" for rejecting a portion of Dr. Kivowitz's opinion that Plaintiff was functionally restricted to "only occasional contact with supervisors, peers and the public." (J. Mot. at 22-24.) The Commissioner concedes that the ALJ did not "explicitly address why he did not adopt the limitation," (id. at 26), but contends that the ALJ was not required to adopt all the limitations that Dr. Kivowitz assessed, (id. at 25).[8]

///

_____

[8] Instead, the Commissioner states: (1) "[c]ontrary to Plaintiff's contentions, only the ALJ is responsible for assessing the RFC—not a doctor," (J. Mot. at 25 (citations omitted)); (2) "[n]or is the ALJ required to incorporate all limitations afforded by each and every doctor," (id. (citation omitted)); (3) "the ALJ did find that Plaintiff was only mildly limited in her social interactions with others," (id. at 26 (internal citations omitted)); and (4) there is no evidence in the record that Plaintiff could not "get along" with supervisors, peers or the public, (id.). None of these arguments directly respond to Plaintiff's contention that the ALJ failed to "articulate some basis" for rejecting this particular portion of Dr. Kivowitz's opinion. (Id. at 22.)

18cv1499-AJB(MSB)

### 1. Applicable Law

Pursuant to Social Security Ruling 96-8P, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." 1996 WL 374184 (July 2, 1996). "The Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998) (citations omitted). While the Commissioner "need not discuss all evidence presented to her . . . . she must explain why 'significant probative evidence has been rejected.'" Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). Finally, in Smolen v. Chater, the court held that by "disregarding" only "some" of the opinions of treating physicians and making contrary findings, the ALJ "effectively rejected them." 80 F.3d 1273, 1286 (9th Cir. 1996).

### 2. Analysis

During the ALJ's examination of Dr. Kivowitz at the administrative hearing, Dr. Kivowitz agreed that a moderate limitation restricted Plaintiff to simple and repetitive tasks. (AR at 66.) The ALJ asked, "Any further functional restrictions?" (Id.) Dr. Kivowitz replied, "Only occasional contact with supervisors, peers and the public." (Id.) The ALJ stated the following regarding Dr. Kivowitz's opinion:

> Dr. J. Kivowitz, M.D., Board certified psychiatry and neurology, reviewed the medical records prior to the hearing and was present to hear the claimant's testimony and offer his own medical expert testimony. Dr. Kivowitz reviewed the medical records. Dr. Kivowitz stated that in his opinion the claimant had the following medically determinable impairments: major depression disorder, excessive compulsive disorder, PTSD, borderline personality disorder, anxiety disorder. She has had GAF scores of 60, indicating moderate symptoms.
>
> In Dr. Kivowitz's opinion, these impairments do not singly or in combination meet or equal a medical Listing.

Dr. Kivowitz opined the claimant's impairments would cause the following limitations: simple repetitive tasks.

. . . .

The undersigned has given great weight to the opinion of the impartial medical expert Dr. Kivowitz. In this case specifically, Dr. Kivowitz is a mental health specialist, he has an awareness of all the evidence in the record, and he has an understanding of social security disability programs and evidentiary requirements. Most importantly, his opinion regarding the claimant's functional limitations is highly credible because it is well-supported by the objective medical evidence already discussed in this decision.

(Id. at 15, 18.)

The parties do not dispute that despite giving great weight to the opinion of Dr. Kivowitz, a nonexamining physician, the ALJ omitted any reference to the portion of Dr. Kivowitz's testimony that Plaintiff was restricted to only occasional contact with supervisors, peers, and the public. (J. Mot. at 24, 26.) As noted above, the Commissioner does not directly respond to Plaintiff's contentions that (1) the ALJ's RFC assessment conflicts with the omitted portion of Dr. Kivowitz's opinion, (id. at 24), and (2) under SSR 96-8P the ALJ must therefore "explain" why he did not adopt this conflicting opinion from a "medical source," (id.).

The ALJ's omission of the portion of Dr. Kivowitz's opinion about which he made contrary findings, can be treated as a rejection of that opinion. See Smolen, 80 F.3d at 1286. The opinion was significant and probative because it was at least partially consistent with Dr. Jensen's opinion that Plaintiff was limited in her ability to "accept instructions and respond appropriately to criticism from supervisors," (AR at 685-86), to which ALJ gave little weight, (id. at 18). The Ninth Circuit has repeatedly cautioned against the "cherry-picking" portions of medical records while ignoring others. See Ghanim, 763 F.3d at 1164-66 (finding that the ALJ improperly cherry-picked portions of an examining physician's findings); Kelly v. Berryhill, 732 F. App'x 558, 561 (9th Cir. 2018) (finding that the ALJ improperly cherry-picked portions of an MRI and ignored

abnormal findings); <u>Miller v. Berryhill</u>, 730 F. App'x 526, 527 (9th Cir. 2018) (finding that the ALJ repeatedly cherry-picked portions of the record to support a finding of inconsistency with the record). The ALJ should therefore have explained his reason for disregarding the portion of Dr. Kivowitz's opinion that supports Plaintiff's claim. <u>See Vincent</u>, 739 F.2d at 1394-95. Based on the above, the ALJ failed to properly evaluate Dr. Kivowitz's opinion.

## VI. CONCLUSION AND RECOMMENDATION

Plaintiff asks the Court to "revers[e] the final decision and award[] benefits." (J. Mot. at 27.) She contends that the Court should credit the opinion of Dr. Jensen as true and award benefits. (<u>See</u> <u>id.</u> at 11-12, 27-28.) In the alternative, Plaintiff moves the Court to remand for further proceedings." (<u>Id.</u> at 27.) The Commissioner maintains that "a finding for payment of benefits would be erroneous" and requests that the Court affirm the ALJ's decision. (<u>Id.</u> at 28-29.)

The reviewing court may enter a judgment "affirming, modifying, or reversing" the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the case to the Social Security Administration for further proceedings. <u>Id.</u> The reviewing court has discretion in determining whether to remand for further proceedings or award benefits. <u>Salvador v. Sullivan</u>, 917 F.2d 13, 15 (9th Cir. 1990); <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989). Remand for further proceedings is warranted where additional administrative proceedings could remedy defects in the decision. <u>Kail v. Heckler</u>, 722 F.2d 1496, 1497 (9th Cir. 1984). Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, where the record has been fully developed, or where remand would unnecessarily delay the receipt of benefits to which the disabled plaintiff is entitled. <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986); <u>Bilby v. Schweiker</u>, 762 F.2d 716, 719 (9th Cir. 1985); <u>Kornock v. Harris</u>, 648 F.2d 525, 527 (9th Cir. 1980).

The Court has discretion to credit the opinion of a treating physician as true where the Commissioner fails to provide adequate reasons for rejecting such an

18cv1499-AJB(MSB)

opinion.  <u>See, e.g.</u>, <u>Garrison v. Colvin</u>, 759 F.3d 995, 1019-23 (9th Cir. 2014) (finding an

abuse of that discretion); <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595-96 (9th Cir. 2004)

(same); <u>Lester</u>, 81 F.3d at 821 (same).  The Court is mindful that the Commissioner

disagrees with the validity of this "credit-as-true" rule.  (<u>See</u> J. Mot. at 28.)  The Court is

also mindful that Plaintiff first filed her application for benefits in March of 2009, (AR at

170), and since that time, two ALJs have considered Plaintiff's application on three

separate occasions, (<u>id.</u> at 170-79 (first ALJ's decision), 200-15 (second ALJ's decision), 4-

20 (second ALJ's decision after remand)), and the district court's remand of the case for

further administrative proceedings, <u>Carol C. I</u>, 2014 WL 50810, at *1.

In <u>Ghanim</u>, however, the Ninth Circuit did not apply or even acknowledge the

credit-as-true rule where substantial evidence did not support an ALJ's rejection of

treating medical opinions.  763 F.3d at 1166.  Instead, the court simply remanded the

case for further administrative proceedings.  <u>Id.</u>  Additionally, in <u>Marsh v. Colvin</u>, the

court did not apply or acknowledge the credit-as-true rule where the ALJ had failed to

even mention a treating doctor's opinion that the claimant was "pretty much

nonfunctional."  792 F.3d 1170, 1173 (9th Cir. 2015).  Instead, the court simply

remanded the case to afford the ALJ the opportunity to comment on the doctor's

opinions.  <u>Id.</u> at 1173-74.  Finally, in <u>Dominguez v. Colvin</u>, the Ninth Circuit made clear

that even if a district court finds sufficient grounds to award benefits, "[a] district court

is generally not required to exercise such discretion[.]"  808 F.3d 403, 407 (9th Cir. 2015)

(citations omitted); <u>see also</u> <u>Leon v. Berryhill</u>, 880 F.3d 1041, 1045 (9th Cir. 2017)

(internal citation omitted) ("Even if we . . . credit the claimant's testimony as true, it is

within the court's discretion either to make a direct award of benefits or to remand for

further proceedings. . . . [The credit-as-true] rule was intended to deter ALJs from

providing boilerplate rejections without analysis.").

In this case, further administrative proceeding would serve a useful purpose.  <u>See</u>

<u>Dominguez</u>, 808 F.3d at 407 (citation omitted) ("Unless the district court concludes that

further administrative proceedings would serve no useful purpose, it may not remand

with a direction to provide benefits.").  The issues to be addressed on remand include the weight to afford Dr. Jensen's opinion that Plaintiff was "markedly limited" in her ability to "maintain regular attendance and be punctual," and "moderately limited" in her ability to "complete a normal workday without interruptions" and "accept instructions and respond appropriately to criticism from supervisors," (AR at 685-86); the weight to afford Dr. Kivowitz's opinion that Plaintiff was limited to "[o]nly occasional contact with supervisors, peers and the public," (see id. at 66); and whether either or both opinions warrant a finding that Plaintiff is unable to perform any job that exists in significant numbers in the national economy, (see J. Mot. at 29); see also Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000) ("In cases where the testimony of the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence, we consistently have remanded for further proceedings rather than payment of benefits.").

For the foregoing reasons, the Court **RECOMMENDS** that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS ORDERED** that no later than **February 14, 2020**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

18cv1499-AJB(MSB)

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **February 21, 2020**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  January 29, 2020

Honorable Michael S. Berg
United States Magistrate Judge

18cv1499-AJB(MSB)